## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CITIZEN ACTION,

       Plaintiff,

v.                               No. CIV 06-0726 RB/WDS

UNITED STATES DEPARTMENT OF
ENERGY, NATIONAL NUCLEAR
SECURITY ADMINISTRATION,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Partial Motion to Dismiss, or in the Alternative, Partial Motion for Summary Judgment (Doc. 15), filed on April 30, 2007, and Plaintiff's Motion for Summary Judgment (Doc. 16), filed on April 30, 2007.[1]  Jurisdiction arises under 28 U.S.C. § 1331.  Having considered the submissions of counsel, relevant law, and being otherwise fully advised, I grant Plaintiff's motion and deny Defendant's motion.

I.     **Background.**

Plaintiff brought this action under the Freedom of Information Act ( "FOIA"), 5 U.S.C. § 552, to compel the release of agency records that were withheld from Plaintiff by the Albuquerque Service Center of the National Nuclear Security Administration (herein "NNSA"), a sub-agency within the United States Department of Energy (herein "DOE") (herein collectively "Defendant").

Plaintiff is a 501 (c)(3) non-profit organization which operates under the fiscal auspices of the New Mexico Community Foundation of Santa Fe, New Mexico.  Plaintiff describes its mission as: "to protect the health and well-being of Albuquerque communities from the release of radioactive

---

[1] Defendant's Motion to Dismiss or for Summary Judgment and Plaintiff's Motion for Summary Judgment on Redactions, (Docs. 44 and 45), will be addressed separately.

and hazardous contamination from a Cold War waste site known as the Mixed Waste Landfill, located at Sandia National Laboratories in Albuquerque, New Mexico" (herein "SNL"). (Am. Compl. ¶ 5.)    Plaintiff disseminates information to the public through its website (www.radfreenm.org) which receives an average of 8,000-10,000 visits per month; through an active member list serve of approximately 1,300 members; through public venues such as town hall meetings, hearings, and public forums; bulk mailings to its members and affiliated organizations; and through its contacts with the local media. (*Id.*)

"NNSA is a semi-autonomous agency within the DOE responsible for enhancing national security through the military application of nuclear energy." (Doc. 15, Def's Ex. B at ¶ 3.)  NNSA "maintains and enhances the safety, security, reliability and performance of the U.S. nuclear weapons stockpile without nuclear testing, and it works to reduce global dangers from weapons of mass destruction." *Id.*

NNSA maintains eight site offices located with its Management and Operating (M&O) Contractors.  (Doc. 15, Def's Ex. B at ¶ 4.)  The NNSA Office of Public Affairs in the DOE/NNSA Service Center in Albuquerque, New Mexico (herein "Albuquerque Service Center"), is responsible for processing FOIA requests for seven of these eight site offices and their respective M&O contractors, including the Sandia Site Office and Sandia National Laboratory (herein "SNL"). (Doc. 15, Ex. A at ¶¶ 13; Ex. B at ¶¶ 4-5.)

The documents at issue consist of Ten Year Comprehensive Site Plans[2] (herein "TYCSPs") and records related to the location and inventory of Irradiated Reactor Fuels and Reactor Irradiated

---

[2] TYCSPs " 'are the foundation for the strategic planning for the physical [nuclear weapons] complex, incorporating the programs' technical requirements, performance measures, budget and cost projections within the funding constraints of the approved [five years] Future-Years Nuclear Security Program . . . .' " (Doc. 17 at 14, quoting NNSA FY06 TYCSP Guidance, December 2004, pp. 1 & 3-4.)

Nuclear Materials (herein "IRFs and RINMs") located at the Mixed Waste Landfill at SNL.

Plaintiff has moved for summary judgment on its claims that Defendant violated FOIA as follows: (1) failing to respond in a timely manner to FOIA requests submitted by Plaintiff to the Albuquerque Service Center on August 30, 2005 and November 14, 2005; (2) failing to respond in a timely manner to a FOIA request submitted by Plaintiff to the Albuquerque Service Center on July 9, 2004; (3) delay in processing of additional FOIA requests submitted by Plaintiff to the Albuquerque Service Center in September, October and November of 2006; and (4) Defendant's conduct constituted a continuing pattern and practice of unlawful delay within the meaning of FOIA.

In its motion, Defendant requests that the Court dismiss Plaintiff's claim of a continuing pattern and practice of unlawful delay.

## II.    Undisputed Facts.

Defendant employs a multi-stage review process for FOIA requests involving M&O Contractors. (Doc. 15, Def's Ex. B, Affidavit of Terry Martin Apodaca [Apodaca Aff.] ¶ 6.) According to Ms. Apodaca, Alternate FOIA and Privacy Act Officer in the Albuquerque Service Office, the Albuquerque Service Center forwards the request to the site office, which is the federal office that administers the contract.  (Apodaca Aff. ¶ 9.)  The site office forwards the request to the M&O contractor to search for the records and identify any potential classified or sensitive information.  (*Id.*)  The site office manager then makes the determination regarding the releasability of the documents and identifies information to be redacted.  (*Id.*)

The documents are then sent to the Albuquerque Service Center for review to ensure that the requested redactions qualify under one or more of the applicable FOIA exemptions, and a draft response letter is prepared.  (Apodaca Aff. ¶ 9.)  The draft response letter and documents are reviewed by the NNSA legal office in Albuquerque to assure that the redactions are appropriate

3

under the relevant exemptions.  (*Id.*)  Upon approval by the NNSA legal office, the Albuquerque

Service Center then copies and redacts the documents.  (*Id.*)

Where the requested documents contain Unclassified Controlled Nuclear Information (herein

"UCNI"), the documents are subjected to additional review by the Office of Classification at DOE

Headquarters in Washington, D.C.  (*Id.*)  *See* 42 U.S.C. § 2168(a); 10 C.F.R. Part 1017.  When a

FOIA requester asks for a document which contains UCNI, the record holder reviews the document

for releasability, identifies and brackets the UCNI, and forwards the document with the identified

UCNI to the Albuquerque Service Center.[3]  (Apodaca Aff. ¶ 21.)  The Albuquerque Service Center

forwards the documents to the Office of Classification for the second review of the UCNI material.

(*Id.*)  When the Office of Declassification completes its review, it forwards the document to the

Albuquerque Service Center with the UCNI identified.  (*Id.*)  The Albuquerque Service Center

redacts the UCNI and prepares a final response with legal concurrence as is done with documents

that do not contain UCNI.  (*Id.*)

On August 30, 2005, Plaintiff submitted a FOIA request to the Albuquerque Service Center

for the SNL TYCSP prepared for Fiscal Year (herein "FY") 2004.  ([Doc. 17] Pl.'s Stat. Undisp.

Mat. Facts ¶ 1; Pl. Ex. A, Declaration of Susan C. Dayton, Plaintiff's former Executive Director,

[Dayton Decl.] ¶ 2.)  On September 13, 2005, Ms. Apodaca sent Plaintiff a letter acknowledging

receipt of the FOIA request.  (Apodaca Aff. ¶ 6.)  Also on September 13, 2005, Ms. Apodaca

forwarded a copy of the August 30, 2005 FOIA request to the Sandia Site Office, which forwarded

it to SNL.  (Apodaca Aff. ¶10.)

---

[3] This process was followed with respect to Plaintiff's August 30, 2005 and subsequent requests.  This process was not in effect in 2004 and 2005 during the processing of Plaintiff's July 2004 FOIA request.  (Apodaca Aff. ¶ 28.)  During the processing of Plaintiff's July 2004 FOIA request, UCNI was reviewed at the Albuquerque Service Center.  *Id.*

4

On November 14, 2005, Plaintiff submitted two separate FOIA requests to the Albuquerque Service Center; one request for the SNL FY 2005 TYCSP, and one request for the SNL FY 2006 TYCSP. (Dayton Decl. ¶ 4.)  On November 15, 2005, Ms. Apodaca sent Plaintiff an email acknowledging receipt of the November 14, 2005 FOIA requests.  (Apodaca Aff. ¶ 7.)  Also on November 15, 2005, Ms. Apodaca forwarded a copy of the November 14, 2005 FOIA request to the Sandia Site Office, which forwarded it to SNL.  (Apodaca Aff. ¶11.)

After completing classification review of the SNL FY 2005 and FY 2006 TYCSPs, SNL submitted the documents to the Sandia Site Office with recommended redactions. (Apodaca Aff. ¶ 14.)  The Sandia Site Office reviewed the documents, agreed with the recommended redactions and provided the response to Ms. Apodaca on August 9, 2006.  (*Id.*)  Ms. Apodaca determined that, not only did all three documents contain exempt information under FOIA, the SNL FY 2005 TYCSP also contained UCNI.  (*Id.*)  Due to the UCNI content, additional classification review needed to be conducted by Defendant's Department of Classification.   (*Id.*)   In addition to her UCNI determination, Ms. Apodaca also became concerned that some of the recommended redactions were not in accordance with FOIA exemption guidelines.  (*Id.*)

On September 5, 2006, Ms. Apodaca met with representatives of the Sandia Site Office and SNL to discuss her concerns.  (Apodaca Aff. ¶ 14.)  Ms. Apodaca requested that SNL re-review all three TYCSPs, which SNL agreed to do.  (*Id.*)

On September 22, 2006, Ms. Apodaca received the revised response with suggested redactions of the SNL FY 2004 TYCSP from the Sandia Site Office.  (Apodaca Aff. ¶ 15.) However, on September 28, 2006, SNL informed Ms. Apodaca that some of the information recommended to be withheld from the SNL FY 2004 TYCSP was included in SNL's Institutional Plan, a publically releasable document.  (Apodaca Aff. ¶ 16.)  For this reason, SNL reviewed the

5

SNL FY 2004 TYCSP for a third time and determined additional information could be released. (*Id*.)  After  making the revised redactions and drafting a cover letter, Ms. Apodaca issued a final response to Plaintiff's August 30, 2005 FOIA request with a redacted copy of the SNL FY 2004 TYCSP on October 17, 2006.  (Apodaca Aff. ¶ 17.)

On January 10, 2007, Ms. Apodaca received Sandia Site Office's revised response to the requests for the SNL FY 2005 and FY 2006 TYCSPs with recommended redactions after the second review.  (Apodaca Aff. ¶ 18.)  The Sandia Site Office determined that additional information could be released, some information needed to be withheld, and the SNL FY 2005 TYCSP contained UCNI.  (*Id*.)  Ms. Apodaca agreed with the redactions.  (*Id*.)

On February 28, 2007, Ms. Apodaca forwarded the SNL FY 2005 TYCSP to Defendant's Office of Classification.  (Apodaca Aff. ¶ 19.)  Also on February 28, 2007, after making the revised redactions and drafting a cover letter, Ms. Apodaca issued a partial response to Plaintiff's November 14, 2005 FOIA request with a redacted copy of the SNL FY 2006 TYCSP.  (Apodaca Aff. ¶ 17.)  On June 18, 2007, after the UCNI review, Defendant supplemented its partial response to Plaintiff's November 14, 2005 FOIA request with a redacted copy of the SNL FY 2005 TYCSP. (Doc. 23 at 2; Doc. 28 at 4.)

On July 9, 2004, Plaintiff submitted a FOIA request to the Albuquerque Service Center for "updated and current" documents pertaining to inventories of IRFs and RINMs.  (Dayton Decl. ¶ 7; Apodaca Aff. ¶ 23.)  Plaintiff had previously requested documents concerning "nuclear reactor fuels shipped to SNL between the years 1980 and 1990", and had been provided with such documents in February 2004 and May 2004.  (Doc. 17, Pl. Ex. F at 1.)  The July 9, 2004 FOIA request sought current copies of inventories and records which were not covered in the previous request, as well as hazardous waste constituents, copies of status books for each of the yard storage

holes (referenced in a document provided to Plaintiff by Defendant on February 4, 2004); and copies of Tiger Team reports (referenced in a document provided to Plaintiff by Defendant on February 4, 2004). (*Id.*)

Defendant provided most of the information sought in the July 9, 2004 request, with two pertinent exceptions. (Dayton Decl. ¶ 8.) On October 20, 2005, Defendant issued a determination letter which found that two documents within the scope of the request, a "Dense Pack Storage Holes Status Book" dated 10/14/04, and a "Monorail Storage Inventory Log," each contained UCNI. (Dayton Decl. ¶ 8.) The determination letter stated that "disclosure of this information could have a significant adverse effect on the health and safety of the public." Defendant, therefore, denied Plaintiff's request for access to those records. (Dayton Decl. ¶ 8.)

On November 18, 2005, Plaintiff submitted an administrative appeal to the DOE's Office of Hearings and Appeals which challenged the NNSA's decision to withhold the documents on the grounds that the agency's determination offered no explanation or factual basis for its determination that the disclosure of the information "could have a significant adverse effect on the health and safety of the public." (Dayton Decl. ¶ 9.)

On April 24, 2006, the Director of DOE's Office of Hearings and Appeals sent Plaintiff a letter stating that the appeal was granted in part and denied in part. (Dayton Decl. ¶ 10.) The letter stated that the documents requested were remanded to the Albuquerque Service Center for the "release of versions from which all UCNI has been deleted or for a new determination if the Service Center determines to withhold information in addition to that which has been properly identified as UCNI." (Dayton Decl. ¶ 10.)

On September 27, 2006, Plaintiff submitted an additional FOIA request to the Albuquerque Service Center for a copy of the SNL FY 2007-2016 TYCSP. ([Doc. 17] Pl.'s Stat. Undisp. Mat.

Facts ¶ 1; Pl. Ex. B, Declaration of David B. McCoy, Plaintiff's Executive Director, [McCoy Decl.] ¶¶ 4-5.)  Defendant produced the SNL FY 2007 TYCSP on June 25, 2007.  (Doc. 28 at 5.)

On October 2, 2006, Plaintiff submitted a FOIA request to the Albuquerque Service Center which sought information pertaining to the site-wide ground water surveillance monitoring plan prepared for SNL.  (McCoy Decl. ¶ 10-11.)  Defendant produced the requested records on April 4, 2007.  (Doc. 28 at 5.)

In November of 2006, Plaintiff submitted several additional requests for information under the FOIA to the Albuquerque Service Center seeking various agency records pertaining to the operations of SNL.  (McCoy Decl. at 8-17.)  On June 15, 2007, Defendant produced records in response to one of the requests. (Doc. 28 at 6 n.5.)  As of July 20, 2007, Defendant had neither produced the balance of the records nor made a final determination.  (*Id*.)

Plaintiff intended to submit a FOIA request to the Albuquerque Service Center for the SNL FY 2008 TYCSP in the Fall of 2007 and plans to regularly submit FOIA requests to the Albuquerque Service Center in the future for both the TYCSPs prepared for SNL in consecutive future years, as well as other publicly-significant agency records pertaining to the operations of SNL.  (McCoy Decl. ¶ 33.)

## III.    Standard.

FOIA claims are typically resolved on summary judgment.  *See KTVY-TV v. United States*, 919 F.2d 1465, 1468 (10th Cir. 1990); *Wickwire Gavin P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004); *Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002); *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993); *Lahr v. Nat'l Transp. Safety Bd.*, 453 F. Supp. 2d 1153, 1168 (C.D. Cal. 2006); *Evans v. U. S. Office of Personnel Mgmt.*, 276 F. Supp. 2d 34, 37 (D.D.C. 2003).  Accordingly, the summary judgment applies herein.

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) (quoting Rule 56(c). The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See* Rule 56(c).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim. *Serna v. Colo. Dept. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that, on summary judgment, the plaintiff can "no longer rest on the pleadings[.]")).

The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving." *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

**IV.    Discussion.**

FOIA "was enacted to facilitate public access to Government documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  "The statute was designed 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.' "  *Ray*, 502 U.S. at 173 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  "Notwithstanding FOIA's aspiration of governmental transparency, Congress recognized that disclosure of certain classes of documents could harm legitimate government interests."  *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225-26 (10th Cir. 2007) (citing *Casad v. Dep't of Health & Human Servs.*, 301 F.3d 1247, 1250-51 (10th Cir. 2002)).

FOIA requires "each agency, upon any request for records . . . [to] make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).  A federal agency that receives a FOIA request must make a determination within 20 working days whether to release the requested documents.  *See* 5 U.S.C. § 552(a)(6)(A)(i).  Although an agency may seek a brief extension of this deadline, *id.* § 552(a)(6)(B), it may only continue to withhold responsive records if they fall within one or more of the nine exemptions to the statute's disclosure mandate.  *Id.* § 552(b)(1)-(9).

When an agency does not respond to a FOIA request in accordance with the time period specified by statute, the requester may seek judicial review "to enjoin the agency from withholding agency records and to order the production of any agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).  The court reviews agency decisions *de novo*.  *See Al-Fayed v. C.I.A.*, 254 F.3d 300, 304-06 (D.C. Cir. 2001).

"The legislative history . . . demonstrates that Congress intentionally set harsh time limits for agencies to respond to FOIA requests because it recognized that information is often useful only if it is timely."  *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1189 (N.D. Cal. 1998).

Indeed, a bona fide request for the production of documents must be honored in time for that information to be useful.) *Nishnic v. U.S. Dep't of Justice*, 671 F. Supp. 776, 791 (D.D.C. 1987). Unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent such abuses. *Payne Enter. Inc. v. U.S.*, 837 F.2d 486, 494 (D.C. Cir. 1988); *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 66 (D.D.C. 2006).

FOIA expressly grants jurisdiction in the district courts to enjoin an agency from improperly withholding agency records. 5 U.S.C. § 552(a)(4)(B); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). The Supreme Court has noted that "[e]ven when an agency does not deny a FOIA request outright, the requesting party may still be able to claim 'improper' withholding by alleging that the agency has responded in an inadequate manner." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 n.12 (1989) (citations omitted) (referring to time limit violations for FOIA compliance as set forth in 5 U.S.C. § 552(a)(6)(C)).

"Courts have long recognized that there may very well be circumstances in which prolonged delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention." *Payne*, 837 F.2d at 491 (internal quotation marks omitted). Other courts have recognized that a federal district court has jurisdiction to hear a claim alleging a pattern and practice of unreasonable delay in responding to FOIA requests, even where the plaintiff's FOIA request had already been resolved. *See, e.g., Mayock v. Nelson*, 938 F.2d 1006, 1006 (9th Cir. 1991); *Payne*, 837 F.2d at 491. Moreover, "[i]n utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief where appropriate . . . to bar future violations that are likely to occur." *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982) (citation omitted). Thus, Plaintiff's claim that Defendant violated FOIA by failing to

11

respond to its requests within the statutory time limits is properly before the court.

In light of the kafkaesque review process adopted by Defendant, it is not surprising that the delay in this case stretched many months beyond the statutorily-prescribed time frame. In a similar case, the Honorable Bruce D. Black observed this process "makes a mockery of the 20-day target set by [FOIA] and violates congressional intent." *Nuclear Watch N.M. v. U.S. Dep't of Energy*, CIV 06-221 BB/WPL, Doc. 59 (Sept. 19, 2007) (Black, J.)  As in *Nuclear Watch*, Defendant offers no rationale for this exceedingly complex process or the certain delay it assures.

Instead, Defendant reasons that a pattern or practice of reviewing FOIA documents cannot be ripe until it is published. (Doc. 23 at 7.)  While it is true that the cases cited by Defendant involved published procedures, *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 641-42 (D.C. Cir. 2002), and *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86 (D.C. Cir. 1986), it does not follow that a pattern and practice of delay in violation of FOIA may not arise in the absence of published guidelines. Defendant's reasoning runs counter to the language of the statute and relevant case law.

To the contrary, "[t]he fact that the practice at issue is informal, rather than articulated in regulations or an official statement of policy, is irrelevant . . .." *Payne Enters., Inc.*, 837 F.2d at 491. A pattern and practice of delay in violation of FOIA may arise even when delay-inducing procedures are not officially codified into regulations. *See Long*, 693 F.2d at 910; *Bloomberg, LP v. U. S. FDA*, 500 F. Supp. 2d 371, 374 (S.D.N.Y. 2007).  Indeed, protracted delay is clearly inconsistent with the purpose of FOIA, which "to ensure the prompt disclosure of information, not its suppression." *Donham v. U.S. Dep't of Energy*, 192 F. Supp. 2d 877, 882-83 (S.D.Ill. 2002).  Simply put, Defendant may not evade judicial scrutiny by failing to publish its labyrinthine process for reviewing FOIA requests.

Similarly, Defendant's assertion that "[t]he case law does not apply to the instant situation

12

where the [TYCSPs] require multiple layers of review and such review necessarily and unavoidably takes time to complete" is unfounded.  (Doc. 23 at 13.)  Review of the case law demonstrates that FOIA requirements apply with equal force to situations involving national security, sensational, or complex issues.  In *Electronic Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 34-38 (D.D.C. 2007), the court granted a preliminary injunction with respect to the expedited release records concerning the President's program of conducting warrantless surveillance of domestic communications.  In *Bloomberg*, 500 F. Supp. 2d at 377, the court held that expedited processing was warranted in connection with a FOIA request for correspondence between the FDA and pharmaceutical manufacturers regarding potential for anti-epileptic drugs to contribute to suicidal thoughts or actions.  In *Or. Natural Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1247-48 (D. Or. 2006), the court found that defendants' untimely determination violated FOIA with respect to a request seeking documents about the effects of livestock grazing on fish).  In sum, Defendant's reliance on the complexity and sensitive nature of the documents at issue is inconsistent with its duties and obligations under FOIA.

Interestingly, Defendant does not claim that exceptional circumstances prevented it from timely responding to the FOIA requests.  If an agency can demonstrate that both exceptional circumstances exist and that it is exercising due diligence in responding to any type of FOIA processing request, "the court may retain jurisdiction and allow the agency additional time to complete its review of the records."  5 U.S.C. § 552(a)(6)(C)(i).  Pursuant to that provision, courts have granted agencies a stay of litigation if (1) the agency is deluged with an volume of requests for information on a level unanticipated by Congress; (2) existing agency resources are inadequate to deal with the volume of requests within the time limits established § 552(a)(6)(C); and (3) the agency can show that it is exercising due diligence in processing the requests.  *See Open America*

*v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976). Defendant did not

claim exceptional circumstances with respect to these same procedures which were also reviewed

by Judge Black in *Nuclear Watch*.

In *Nuclear Watch*, Judge Black concluded:

> While the Court understands the 20-day benchmark in the Act may not be realistic
> for extensive document requests, the DOE here makes no claim and presents no
> evidence of "exceptional circumstances." To the contrary, it regularly reviews and
> redacts each TYCSP at multiple levels, but contends such practices are not published
> and therefore immune from FOIA analysis. However, it is clear the DOE itself is
> satisfied with a less convoluted procedure since the DOE placed a redacted . . .
> version of the LANL 2004 TYCSP [online] long before Plaintiff received its official
> FOIA response.

I concur with Judge Black's analysis and hold that Plaintiff has established Defendant

engaged in a continuing pattern and practice of unlawful delay in responding to Plaintiff's various

FOIA requests related to the operations of SNL.  Accordingly, Plaintiff is entitled to summary

judgment on its claims that Defendant violated FOIA by (1) failing to respond in a timely manner

to FOIA requests submitted by Plaintiff to the Albuquerque Service Center on August 30, 2005 and

November 14, 2005; (2) failing to respond in a timely manner to a FOIA request submitted by

Plaintiff to the Albuquerque Service Center on July 9, 2004; (3) delaying processing of additional

FOIA requests submitted by Plaintiff to the Albuquerque Service Center in September, October and

November of 2006; and (4) Defendant's conduct which constituted a continuing pattern and practice

of unlawful delay within the meaning of FOIA.  Defendant's request that the court dismiss

Plaintiff's claim of a continuing pattern and practice of unlawful delay is denied.

Plaintiff requests injunctive relief for future violations of FOIA.  Defendant opposes such

request and contends that Plaintiff has failed to exhaust administrative remedies with respect to

future violations.  Defendant's arguments concerning exhaustion of administrative remedies are

14

foreclosed by 5 U.S.C. § 552(a)(6)(C)(i), which provides a requestor "shall be deemed to have exhausted his administrative remedies . . . if the agency fails to comply with the time limit provisions."   Given the circumstances, I find that Plaintiff has adequately exhausted its administrative remedies.   *See Or. Natural Desert Ass'n*, 409 F. Supp. 2d at 1247.   Thus, the question is whether injunctive relief is authorized and appropriate.

FOIA expressly grants jurisdiction in the district courts to enjoin an agency from improperly withholding agency records.   5 U.S.C. § 552(a)(4)(B) ("the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.").   The Supreme Court has recognized that FOIA, "to a definite degree, makes the District Court the enforcement arm of the statute, [citing 5 U.S.C. § 552(a)(3)]."   *Renegotiation Bd. v. Bannercraft Co.*, 415 U.S. 1, 19-20 (1974). Significantly, consistent with the broad statutory grant of authority, "FOIA imposes no limits on courts' equitable powers in enforcing its terms."   *Payne Enters., Inc.*, 837 F.2d at 494-95 (D.C. Cir. 1988).   Injunctive relief is authorized; the question becomes whether it is appropriate.

Courts have found injunctive relief may be  "appropriate . . . to prevent the prolonged delays and repeated litigation over disclosure of the same type of documents in the future."   *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982).   Here, Plaintiff has repeatedly requested the same type of documents.  Defendant has engaged in a pattern and practice of delay in responding to such requests. Under these circumstances, I find injunctive relief is appropriate.

However, due to the sensitive nature of the information requested, I am reluctant to impose arbitrary time limits, beyond those imposed statutorily, for production.   Inflexible limits would, in effect, "grant[] a preference to litigants over other FOIA requestors . . . result[ing] in an unfair and inefficient first to sue, first served system."   *Donham*, 192 F. Supp. 2d at 883. Additionally, I am

15

mindful that the delay associated with the production of documents has been trending downward, which suggests Defendant has taken steps to streamline the process. Like the *Donham* court, I believe that an agreement between the parties would offer a more appropriate remedy than a court-mandated fiat. Accordingly, the parties are directed to confer on a reasonable time frame for responding to pending requests and for processing future requests. Counsel should submit a joint status report on all pending matters within thirty days. A hearing will be scheduled to fashion an appropriate remedy, or remedies, in conjunction with a hearing on the pending motions concerning redactions.

**WHEREFORE,**

  **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 16), filed on April 30, 2007, is **GRANTED.**

  **IT IS FURTHER ORDERED** that Defendant's Partial Motion to Dismiss, or in the Alternative, Partial Motion for Summary Judgment (Doc. 15), filed on April 30, 2007, is **DENIED**.

  **IT IS FURTHER ORDERED** that counsel shall submit a joint status report on all pending matters within thirty days.

  **IT IS FURTHER ORDERED** that a hearing will be scheduled on remedies for the FOIA violations discussed herein, as well as on the pending motions, as the calendar of the Court permits.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**


16