IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CITIZEN ACTION,**

        **Plaintiff,**

v.                                                        **No. CIV 06-0726 RB/WDS**

**UNITED STATES DEPARTMENT OF
ENERGY, NATIONAL NUCLEAR
SECURITY ADMINISTRATION,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** is before the Court on Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 44), filed on November 21, 2007, and Plaintiff's Motion for Summary Judgment on Redactions (Doc. 45), filed on November 21, 2007. Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel, relevant law, and being otherwise fully advised, I deny Plaintiff's motion in part, and grant Defendant's motion in part, as more fully discussed herein.

**I.    Background.**

      Plaintiff brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the release of agency records that were withheld from Plaintiff by the Albuquerque Service Center of the National Nuclear Security Administration ("NNSA"), a sub-agency within the United States Department of Energy ("DOE") (collectively, "Defendant").

      The pending motions address Ten Year Comprehensive Site Plans and two documents relating to the location and inventory of Irradiated Reactor Fuels and Reactor Irradiated Nuclear Materials located at the Mixed Waste Landfill at Sandia National Laboratory known as a "Dense Pack Storage Holes Status Book," dated 10/14/04 (42 pages), and a "Monorail Storage Inventory

Log," dated 10/14/04 (4 pages). (Doc. 15-12, Def. Ex. A10.)  The parties refer to these latter two documents as "Yard Hole Materials" or "Yardhole Records" ("Yard Hole Documents" or "YHDs").

In a Joint Status Report, filed on April 29, 2008, and First Addendum to the Joint Status Report, filed on May 16, 2008, the parties indicated that Court intervention is not needed on the portions of these motions that address the FOIA exemptions applied to the Ten Year Comprehensive Site Plans.  (*See* Joint Status Reports [Docs. 60 and 61].)  Therefore, only arguments germane to YHDs are addressed herein.

With respect to the YHDs, Defendant asserts that the information redacted from the YHDs pursuant to 5 U.S.C. § 552(b)(3), (herein "FOIA Exemption 3"), was properly withheld.  Plaintiff argues that (1) FOIA Exemption 3 does not permit Defendant to withhold the redacted information; and, in the alternative, (2) the Court should review the YHDs in camera and order the release of all reasonably segregable non-exempt information.

**II.     Undisputed Facts.**

On July 9, 2004, Plaintiff submitted a FOIA request seeking, inter alia, the YHDs. (Doc. 15, Ex. A ¶ 23; Doc. 17-7, Pl. Ex. D.)  On October 20, 2005, Defendant issued a determination letter stating that the YHDs were withheld pursuant to FOIA Exemption 3 because they contained Unclassified Controlled Nuclear Information ("UCNI") within the meaning of the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011-2296 ("AEA"). (Doc. 15, Ex. A ¶ 27; Doc. 15-10, Def. Ex. A8.) Defendant determined that the YHDs "contain specific information about the movement and storage of Special Nuclear Material involving specific storage hole locations, and  . . . the disclosure of this information could have a significant adverse effect on the health and safety of the public."  (Doc. 15-10, Def. Ex. A8 at 2-3.)  Defendant, therefore, denied Plaintiff's request for access to the YHDs in their entirety.  (Doc. 15-10, Def. Ex. A8 at 3.)

On November 22, 2005, Plaintiff appealed the decision to withhold the YHDs. (Doc. 15-11, Def. Ex. A9; Doc. 16, Ex. E.) On April 24, 2006, the Director of DOE's Office of Hearings and Appeals noted that the Deputy Director of the Office of Security and Safety Performance Assurance (SSPA) determined the requested documents contained UCNI. (Doc. 15-11, Def. Ex. A9 at 2.) Specifically, the information identified as UCNI "could reasonably be expected to have a significant adverse effect on the health and safety of the public or the common defense and security by significantly increasing the likelihood of theft, diversion, or sabotage of nuclear materials, equipment, or facilities." (*Id*.)

The SSPA, however, determined that the majority of the documents' content was not UCNI and provided the Office of Hearing and Appeals with copies of the documents from which the UCNI had been deleted. (*Id*.) Accordingly, the Office of Hearings and Appeals remanded the matter to NNSA's Albuquerque Service Center for the "release of versions from which all UCNI has been deleted or for a new determination if the Service Center determines to withhold information in addition to that which has been properly identified as UCNI." (Doc. 15-11, Def. Ex. A9; Doc. 46, Ex. F; Doc. 16, Ex. E.)

On September 14, 2006, Defendant disclosed the non-UCNI information in the YHDs identified by the SSPA, with the exception of the names and initials of SNL contractor employees, which were withheld pursuant to 5 U.S.C. § 552(b)(6), (herein "FOIA Exemption 6").[1] (Doc. 15-2, Declaration of Terry Martin Apodaca ¶ 28; Doc. 15-12, Def. Ex. A10 at 2.)

---

[1] FOIA Exemption 6 excepts production of "(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). Plaintiff does not challenge the application of FOIA Exemption 6. (Doc. 44-4, Def. Ex. A2.)

3

On July 25, 2007, Defendant provided a Vaughn[2] Index to Plaintiff explaining that 5 U.S.C. § 552(b)(2), (herein "FOIA Exemption 2"),[3] and FOIA Exemption 6 apply to the information withheld from the YHDs. (Doc. 44, Ex. A Declaration of Pamela Arias-Ortega, ¶ 2; Doc. 44, Ex. A1.) On November 16, 2007, Defendant provided to Plaintiff a revised Vaughn Index to correct the inadvertent omission of an index entry for one of the two documents produced in September 2006 with information marked as withheld pursuant to FOIA Exemption 3. (Doc. 44, Ex. A at ¶ 4; Doc. 44 Ex. A3.)

Defendant determined that the information in the two documents at issue contain UCNI because (1) the documents concern the physical protection of nuclear material contained in a utilization facility, and (2) the unauthorized dissemination of this information could reasonably be expected to have an adverse effect on the health and safety of the public by significantly increasing the likelihood of the theft of nuclear materials and/or the sabotage of a nuclear facility. (Declaration of Andrew Weston-Dawkes, Doc. 44-13, Def. Ex. D ¶ 5.) The information redacted from the two documents concerns the specific locations and amounts of nuclear materials located at SNL in Albuquerque. *Id*.

According to the Declaration of Mr. Weston-Dawkes:

In the post-9/11 environment, the DOE has heightened concerns that radioactive materials could be obtained by terrorists and readily dispersed causing widespread environmental and health concerns far beyond any impact to the Department and its operations. Terrorists may seek to use a radioactive dispersal device (RDD), a highly

---

[2] A Vaughn index is "a compilation prepared by the government agency . . . listing each of the withheld documents and explaining the asserted reason for its nondisclosure." *Anderson v. Dep't of Health and Human Servs.*, 907 F.2d 936, 940 n.3 (10th Cir. 1990) (citing *Vaughn v. Rosen*, 484 F.2d 820 [D.C. Cir. 1973], *cert denied*, 415 U.S. 977 [1974]).

[3] FOIA Exemption 2 exempts from production "matters that are . . . (2) related solely to the internal personnel rules and practices of an agency[.]" 5 U.S.C. § 552(b)(2). Plaintiff does not challenge the application of FOIA Exemption 2. (Doc. 44-4, Def. Ex. A2.)

4

      radioactive source blown up by high explosives, causing the radioactivity to spread to surrounding areas. Depending on wind direction and the initial location of the device, the spread of radioactivity could potentially cover areas of high population density resulting in numerous casualties.

(Doc. 44-13, Def. Ex. D ¶ 4.)

### III.     Standard.

FOIA claims are typically resolved on summary judgment. *See KTVY-TV v. United States*, 919 F.2d 1465, 1468 (10th Cir. 1990); *Wickwire Gavin P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004); *Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002); *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993); *Lahr v. Nat'l Transp. Safety Bd.*, 453 F. Supp. 2d 1153, 1168 (C.D. Cal. 2006); *Evans v. U. S. Office of Personnel Mgmt.*, 276 F. Supp. 2d 34, 37 (D.D.C. 2003). Accordingly, the summary judgment standard applies herein.

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) (quoting Rule 56(c)). The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See* Rule 56(c).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citing

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that, on summary judgment, the plaintiff can "no longer rest on the pleadings[.]")).

The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving." *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

**IV.   Discussion.**

FOIA "was enacted to facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). "The statute was designed 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.' " *Ray*, 502 U.S. at 173 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "Notwithstanding FOIA's aspiration of governmental transparency, Congress recognized that disclosure of certain classes of documents could harm legitimate government interests." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225-26 (10th Cir. 2007) (citing *Casad v. Dep't of Health & Human Servs.*, 301 F.3d 1247, 1250-51 (10th Cir. 2002)).

With regard to FOIA exemptions, the Supreme Court has explained:

The system of disclosure established by the FOIA is simple in theory. A federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b). *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 793-794 (1984). Congress created these exemptions because it "realized that legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also CIA v. Sims*, 471 U.S. 159, 167 (1985). Nonetheless, "[t]he

> mandate of the FOIA calls for broad disclosure of Government records," *id.*, at 166, and for this reason we have consistently stated that FOIA exemptions are to be narrowly construed, *see Abramson, supra*, 456 U.S. at 630; *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

*U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988).

> FOIA Exemption 3 permits agencies to withhold matters that are:
>
> specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

Due to the liberal construction of FOIA afforded in favor of disclosure, *Anderson v. Dep't of Health and Human Servs.*, 907 F.2d 936, 941 (10th Cir. 1990), the agency bears the burden of justifying its decision to withhold the documents. *See* 5 U.S.C. §552(a)(4)(B). Moreover, Exemption 3 permits an agency to withhold only those parts of a document that are expressly protected by statute. *Julian*, 486 U.S. at 11. Pursuant to 5 U.S.C. § 552(b)(9), an agency must supply to a FOIA applicant "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt."

Courts employ a two-part inquiry to determine whether Exemption 3 applies to a particular FOIA request. *See Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007). The first step examines whether the withholding statute meets the requirements of Exemption 3. *Id*. The second step inquires whether the requested information falls within the scope of the withholding statute. *Id*.

"Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Ass'n of*

7

*Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987). However, the court must "find a congressional purpose to exempt matters from disclosure in the actual words of the statute . . . [not] in an agency's interpretation of the statute." *Natural Res. Def. Council, Inc. v. Def. Nuclear Facilities Safety Bd.*, 969 F.2d 1248, 1251 (D.C. Cir. 1992); *Anderson*, 907 F.2d at 951 n.19.

The AEA, which provides explicitly for the protection of certain nuclear data, satisfies the requirements of Exemption 3. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 112 n.8 (1980) (discussing legislative history of FOIA in reference to AEA). Section 2168 of the AEA prohibits the unauthorized dissemination of UCNI and directs the DOE to issue regulations or orders to protect from the unauthorized dissemination of information that has been determined to contain UCNI. 42 U.S.C. § 2168(a); *see also* 10 C.F.R. Part 1017 (containing regulations promulgated pursuant to Section 2168(a)). Section 2168 of the AEA authorizes the DOE to promulgate rules prohibiting the disclosure of certain types of information but only "if the unauthorized disclosure of such information could reasonably be expected to have a significant adverse effect on the health and safety of the public or the common defense and security". 42 U.S.C. § 2167(a); *see also id.* § 2168(a)(2). Section 2167(a) explicitly cross-references FOIA Exemption 3. *See* 42 U.S.C. § 2167(a). Plaintiff does not argue that the AEA does not meet the criteria of Exemption 3. Based on the legislative history of FOIA, as well as the plain language of the AEA, I conclude that the AEA satisfies the requirements of Exemption 3.

The second step of the Exemption 3 inquiry is whether the withheld information falls within the scope of the AEA. Defendant maintains that the withheld information is UCNI. The AEA provides that information designated as UCNI is limited to information concerning atomic energy defense programs. *See* 10 C.F.R. § 1017.1(a). UCNI pertains to, inter alia, "…security measures

(including security plans, procedures, and equipment) for the physical protection of (i) …utilization facilities, (ii) nuclear material contained in such facilities, . . .." 42 U.S.C. §2168(a)(1)(B).  The unauthorized dissemination of UNCI  ". . . could reasonably be expected to have an adverse effect on the health and safety of the public or the common defense and security by significantly increasing the likelihood of . . . theft, diversion, or sabotage of nuclear materials, equipment or facilities." 42 U.S.C. § 2168 (a)(2).  If the information is UCNI, it falls within the scope of Exemption 3.

Defendant prepared Vaughn Indexes in support of its determination that the withheld information contained UCNI and was, as a consequence, within the scope of Exemption 3.  An adequate factual basis for Government agency's invocation of FOIA exemption may be established, depending on the circumstances of the case, through affidavits, a Vaughn Index, in camera review, or through a combination of these methods.  *See Miccosukee Tribe of Indians of Fla. v. U.S.*, 516 F.3d 1235, 1258 (11th Cir. 2008). "When an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Morley v. C.I.A.*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (internal quotations and citations omitted).  By the same token, the agency need not specify its objections to disclosure in such detail as to compromise the secrecy of the information.  *Bowen v. U. S. Food and Drug Admin.*, 925 F.2d 1225, 1227 (9th Cir. 1991).  Notably, if the Vaughn Index and supporting declarations "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." *Bowen*, 925 F.2d at 1227  (citations and internal quotation marks omitted).

In the  instant case, Defendant prepared detailed Vaughn Indexes specifically identifying the portions of the YHDs that were withheld as UNCI.  Defendant additionally submitted declarations

in support of its assertion that the information was properly categorized as UCNI because (1) the information concerns the physical protection of nuclear material contained in a utilization facility, and (2) the unauthorized dissemination of this information could reasonably be expected to have an adverse effect on the health and safety of the public by significantly increasing the likelihood of the theft of nuclear materials and/or the sabotage of a nuclear facility.

The Vaughn Indexes and supporting declarations submitted are reasonably detailed, and describe the withheld information sufficiently to establish the applicability of FOIA Exemption 3. *See Church of Scientology v. U. S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979). Because the record is sufficiently developed, a hearing is unnecessary. *See Mead Data Cent., Inc. v. U. S. Dep't of the Air Force*, 566 F.2d 242, 249 (D.C. Cir. 1977). Defendant has satisfied its burden of proving that all of the information withheld from the YHDs was UCNI and was properly withheld from Plaintiff pursuant to FOIA Exemption 3. The Court declines to conduct an in camera review of the documents or any additional proceedings on the applicability of FOIA Exemption 3 to the YHDs.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 44), filed on November 21, 2007, is **GRANTED IN PART AS MORE FULLY DISCUSSED HEREIN.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment on Redactions (Doc. 45), filed on November 21, 2007, is **DENIED IN PART AS MORE FULLY DISCUSSED HEREIN.**

**IT IS FURTHER ORDERED** that counsel shall submit a joint status report on all pending matters by June 30, 2008.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**